**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BLITZSAFE TEXAS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**GENERAL MOTORS COMPANY,**<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:19-cv-377<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Blitzsafe Texas, LLC ("Blitzsafe" or "Plaintiff"), files this Complaint against Defendant General Motors Company ("GM" or "Defendant"), for patent infringement under 35 U.S.C. § 271 and alleges as follows:

## THE PARTIES

1. Plaintiff, Blitzsafe Texas, LLC, is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principal place of business at 100 W. Houston Street, Marshall, Texas 75670. Blitzsafe sells automotive interface products that allow the end user to connect a third-party external audio device or multimedia device to a car stereo in order to play the content on the device through the car stereo system and speakers from its office in Marshall, Texas. Blitzsafe sells its products throughout the United States including in this judicial district. Blitzsafe is the owner of all right, title, and interest in and to U.S. Patent No. 7,489,786 and U.S. Patent No. 8,155,342.

2. Upon information and belief, General Motors Company is a Delaware corporation with a place of business at 300 Renaissance Center, Detroit, MI, 48243, and may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

3. Upon information and belief, GM is the exclusive manufacturer, importer and distributor of Buick, Cadillac, Chevrolet and GMC branded vehicles. Upon information and belief, GM manufactures and assembles, both in the United States and internationally, Buick, Cadillac, Chevrolet and GMC branded vehicles, and distributes them through Buick, Cadillac, Chevrolet and GMC dealers ("Dealers") throughout the United States. GM maintains an automobile factory in Arlington, Texas.

4. Upon information and belief, GM is registered to do business in Texas with the Secretary of State. The Texas Business Organizations Code (Bus. Org. § 9.001) requires all entities formed outside of the State of Texas to complete such registration in order to "transact business" in Texas. Upon information and belief, GM is registered as taxable entity with the Texas Comptroller of Public Accounts in connection with its marketing and distribution activities, and its sales of Buick, Cadillac, Chevrolet and GMC branded vehicles through its relationships with the Dealers.

5. Upon information and belief, GM engages in sales and service of products that infringe the patents-in-suit at numerous vehicle dealerships in the Eastern District of Texas, including, for example, Gabriel/Jordan Buick GMC,[1] Maverick Chevrolet,[2] ORR Cadillac GMC,[3] Sisk Buick,[4] and Yates Buick GMC.[5]

---

[1] Located in Kilgore, Texas. *See* https://www.gabrieljordanbpg.com/.
[2] Located in Marshall, Texas. *See* https://www.maverickchevrolet.net/.
[3] Located in Longview, Texas. *See* https://www.cadillaclongview.com/.

6. Upon information and belief, GM manages the marketing, sales and service of Buick, Cadillac, Chevrolet and GMC branded products to customers and/or potential customers located in Texas and in the judicial Eastern District of Texas. Upon information and belief, each Dealer permitted to sell and service new GM vehicles in this District must be authorized by GM.

7. Upon information and belief, GM has numerous employees in the State of Texas, including at GM's automobile factory in Arlington, Texas.

8. Upon information and belief, GM employees work with Dealers in this District on issues related to sales, marketing, technical training, and the service of parts and accessories. Upon information and belief, GM reimburses these employees for travel and personal expenses related to their job responsibilities.

9. Upon information and belief, Dealers located within the Eastern District of Texas have executed dealer agreements with GM. Upon information and belief, these dealer agreements set forth standards and requirements enumerated by GM that Dealers are required to comply with. Upon information and belief, these standards and requirements are directed to at least the Dealers' facility, space, appearance, layout, and equipment.

10. Upon information and belief, GM regularly, continuously, and systematically provides support to and control over the Dealers located in the Eastern District of Texas. Upon information and belief, GM employees regularly and systematically work at Dealers in this judicial district to educate Dealer employees regarding features of the accused products sold in this judicial district, including but not limited to features regarding audio and multimedia integration systems. Upon information and belief, various positions at GM require working at the Dealers in this District.

---

[4] Located in Longview, Texas. *See* https://www.siskbuicklongview.com/.

[5] Located in Henderson, Texas. *See* https://www.yatesbuick.com/.

11. Upon information and belief, GM employees regularly travel to the Dealers in this district in order to provide support and exercise control over the sales, marketing, and service of Buick, Cadillac, Chevrolet and GMC automobiles in this District. As examples of GM's support to and control over the Dealers, upon information and belief, GM employees travel to the Dealers located in this District to ensure compliance with GM dealers standards, ensure that advertising is consistent with GM corporate message and branding guidelines, train dealership personnel on new products, assist Dealers with problem solving, diagnose technical concerns, provide on-site assistance, assist Dealers with sales, marketing, business development and business plan, ensure dealer orders meet market demand, manage monthly vehicle allocation, and review and analyze Dealer financial statements and consult with Dealers to improve their operations and retail business.

12. Upon information and belief, while GM employees are working at dealerships in this District, they have access to communication devices (cell phones, laptops, etc.) provided by GM on which they conduct business on behalf of GM. Upon information and belief, GM employees have access to their GM e-mail accounts while they are present in dealerships in this District.

13. Upon information and belief, through its exclusive agents, instrumentalities and representatives, GM provides new car warranty service within the district on the infringing products. Upon information and belief, GM warrants to the original and each subsequent owner of new Buick, Cadillac, Chevrolet and GMC vehicles that any Authorized Dealer will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period. Upon information and belief, all such warranty work is paid for by GM. Upon information and belief, there are numerous authorized Dealers performing warranty work

in the Eastern District of Texas, at the service departments at, for example, Gabriel/Jordan Buick GMC, Maverick Chevrolet, ORR Cadillac GMC, Sisk Buick, and Yates Buick GMC. Upon information and belief, service technicians employed at these Dealers participate in GM-sponsored training programs, schools, and events.

14. Upon information and belief, GM provides Limited Warranty and Owner Assistance Information booklets ("Booklets") to customers, including those customers that purchase Buick, Cadillac, Chevrolet and GMC vehicles in the Eastern District of Texas. Upon information and belief, the Booklets direct questions regarding warranty rights and responsibilities to GM's Customer Assistance Center. Upon information and belief, the Booklets require, to the extent allowed by state law, customers, including those customers that purchase Buick, Cadillac, Chevrolet and GMC vehicles in the Eastern District of Texas, to provide written notification to GM of any service difficulties at the Dealers before customers are eligible for the remedies provided by state law.[6]

15. Upon information and belief, the Buick, Cadillac, Chevrolet and GMC dealerships located within this district are GM's exclusive agents, instrumentalities, and representatives within this judicial district for the provision within this District of all new warranty service for Buick, Cadillac, Chevrolet and GMC vehicles sold both within the district and outside the district. Upon information and belief, if a Buick, Cadillac, Chevrolet and GMC customer located within the district needs to have new car warranty repairs performed within the

---

[6] *See* https://www.chevrolet.com/content/dam/chevrolet/na/us/english/index/owners/warranty/02-pdfs/19_CHEV_WM_.pdf;
https://www.gmc.com/content/dam/gmc/na/us/english/index/owners/warranty-protection/2017/warranty-details/02-pdfs/19_GMC_WM_en_US_U_23400289A_2018APR13.pdf.

district, GM requires the Buick, Cadillac, Chevrolet and GMC customer to have the work performed at one of their authorized Dealers within the District.[7]

16. Upon information and belief, GM controls the provisions of warranty service and work at the Dealers in this District. Upon information and belief, GM requires the Authorized dealers to perform warranty work. Upon information and belief, the technicians employed by GM provide direct supervision and assistance within the District on a regular, ongoing, and continuous basis in connection with warranty repairs being performed within the district.

17. Upon information and belief, GM regularly engages in marketing activities that promote the sale of Buick, Cadillac, Chevrolet and GMC-branded products to customers and/or potential customers located in Texas and in the judicial Eastern District of Texas. Upon information and belief, GM maintains interactive commercial websites, accessible to residents of Texas and the Eastern District of Texas, through which GM promotes their products that infringe the patents-in-suit. Upon information and belief, these interactive commercial websites direct customers as to where to buy Buick, Cadillac, Chevrolet and GMC-branded vehicles with accused products, including the Dealers within the Eastern District of Texas. GM's interactive commercial websites allow a customer to see available inventory and Dealer locations in this District through its Search Inventory and Locate a Dealer functions.[8] These interactive

---

[7] *Id.*

[8] *See, e.g.*, the following captures from GM's websites for Buick, Cadillac, Chevrolet and GMC (accessed on June 27, 2019) show the Search Inventory and Locate a Dealer function of GM's websites that directs customers to its Authorized Dealers:






commercial websites direct customers as to where to service their Buick, Cadillac, Chevrolet and GMC-branded vehicles based on the customer's location and needed service, and GM's websites allow customers to schedule service appointments at the Dealers within the Eastern District of







(https://www.cadillac.com/locate-a-vehicle-near-you?x-symbolic=lnv&x-carline=xt4&x-modelyear=2020&q-sourcepath=/vdc-collections/2020/crossovers-suvs/xt4-crossover/xt4/jcr%3Acontent/vdcVehicleInfoBlockConfig/vdcShoppingLinks&x-bodystyle=xt4; https://www.gmc.com/locate-vehicle?x-symbolic=lnv&x-carline=terrain&x-modelyear=2019&q-sourcepath=/index/vdc-collections/2019/crossovers-suvs/terrain/terrain-denali/jcr%3Acontent/vdcVehicleInfoBlockConfig/vdcShoppingLinks&x-bodystyle=terrain_denali; https://www.buick.com/locate-a-vehicle-near-you?x-symbolic=lnv&x-carline=regal-sportback&x-modelyear=2019&x-bodystyle=regal-sportback; https://www.chevrolet.com/locate-inventory/cruze#?radius=25&models=Cruze&years=2019&makes=Chevrolet&requestedPostalcode=10001&postalcode=10001)













(https://www.chevrolet.com/dealer-locator; https://www.buick.com/locate-buick-dealer#!?searchTerm=75672&searchType=postalCode; https://www.gmc.com/locate-gmc-dealer; https://www.cadillac.com/locate-dealer).

Texas.[9] GM's interactive commercial websites have submission forms that allow customers to schedule test drives with Dealers in this District and request quotes from local Dealers in this District. GM's interactive websites also provide service and care information, and materials about GM's products, including the accused products. Upon information and belief, GM attempts to sell their branded vehicles within the District, which include the infringing products, by causing advertisements for their vehicles to appear on television and radio programs broadcast into the District and in local newspapers distributed within the District.

18. Upon information and belief, Defendants' commercial interactive websites solicit orders from customers, including customers in this District. Upon information and belief, Defendants' websites allow a customer to "build your own" Chrysler, Fiat, Dodge, Jeep, Ram, Alfa Romeo and Maserati vehicle. Upon information and belief, once a customer builds a vehicle on one of Defendants' websites, the website presents the customer with the option to request a quote. Upon information and belief, once a customer provides contact information to request a quote and selects up to 3 dealers based on zip code, Defendants then have the authorized dealers contact the customer to execute the sale of the vehicle.

19. Upon information and belief, GM owns "Buick," "Cadillac," "Chevrolet" and "GMC" trademarks, and all trademarks related to the Buick, Cadillac, Chevrolet and GMC brands, in the United States. Upon information and belief, the building exteriors of the Dealers in

[9] *See, e.g.*, https://www.buick.com/index/owners/certified-service-dealer-locator/schedule-service/schedule-service.html#!?searchTerm=75672&searchType=postalCode; https://www.cadillac.com/index/ownership/maintenance-and-service/schedule-a-service.html#!?searchTerm=75069&searchType=postalCode#%3Fservices=047; https://www.chevrolet.com/certified-service-dealer-locator#!?searchTerm=10001&searchType=postalCode; https://www.gmc.com/certified-service/dealer-locator#!?searchTerm=10001&searchType=postalCode.

this District are branded with GM's trademarked logos, and the Dealers names include GM's trademarks: "Buick," "Cadillac," "Chevrolet" and "GMC."[10]

---

[10] *See, e.g.*, the following captures from Google Maps (accessed on June 27, 2019):
Showing the exterior of McKinney Buick GMC:








(https://www.google.com/maps/@33.1592458,-96.6466434,3a,37.5y,8.94h,97.59t/data=!3m6!1e1!3m4!1sPcDxcRuuun8hnk5qD0TuFw!2e0!7i16384!8i8192 (image uploaded to Google Maps Nov. 2018); https://www.google.com/maps/@33.1601552,-96.6456819,3a,37.5y,260.38h,92.55t/data=!3m6!1e1!3m4!1sJQX713jtib7eUaUu3yp7Pw!2e0!7i16384!8i8192 (image uploaded to Google Maps Nov. 2018); https://www.google.com/maps/@33.1595259,-96.6463239,3a,37.5y,313.64h,93.21t/data=!3m6!1e1!3m4!1sRqQCCvM7OdampjrSKx9vjQ!2e0!7i16384!8i8192 (image uploaded to Google Maps Nov. 2018));

Showing the exterior of Classic Buick GMC:










(https://www.google.com/maps/@30.1138292,-94.1420997,3a,75y,233.59h,89.7t/data=!3m6!1e1!3m4!1ssaSIN3GJmU-dMO5L4MFYyA!2e0!7i13312!8i6656 (image uploaded to Google Maps Feb. 2017); https://www.google.com/maps/@30.1142592,-

## JURISDICTION AND VENUE

20. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21. This Court has personal jurisdiction over GM. GM conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this judicial district and/or has contributed to patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States.

22. Upon information and belief, Defendant transacts substantial business in the state of Texas and this judicial district. Defendant has committed acts of infringement in this District, by among other things, offering to sell and selling products that infringe the asserted patents, including the accused devices as alleged herein, as well as providing service and support to their customers in this District. Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the state of Texas and/or imported into the United States to the state of Texas.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because, among other things, GM is subject to personal jurisdiction in this judicial district, has a regular

---

94.1425505,3a,75y,235.86h,92.11t/data=!3m6!1e1!3m4!1sAfgfEcW8jBY_8Y24RO-5RQ!2e0!7i13312!8i6656 (uploaded to Google Maps Feb. 2017); https://www.google.com/maps/@30.1143758,-94.142997,3a,37.5y,298.76h,100.51t/data=!3m6!1e1!3m4!1sa-TbpJDOi2oKDjFTxFoGmw!2e0!7i13312!8i6656 (uploaded to Google Maps May 2018); https://www.google.com/maps/@30.1138745,-94.1424844,3a,75y,153.8h,100.75t/data=!3m6!1e1!3m4!1sCMmbQmjwBuVfl9SHCLyoLg!2e0!7i13312!8i6656 (image uploaded to Google Maps May 2018)).

and established place of business in Texas and in this judicial district, has purposely transacted business involving the accused products in this judicial district, including sales to one or more customers in Texas, and certain of the acts complained of herein occurred in this judicial district.

24. GM is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and judicial district, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENTS-IN-SUIT

25. On February 10, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,489,786 (the "'786 Patent") entitled "Audio Device Integration System."

26. On April 10, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,155,342 (the "'342 Patent") entitled "Multimedia Device Integration System."

## FACTUAL ALLEGATIONS

27. The patents-in-suit generally cover systems for integrating third-party audio devices and multimedia devices with a car stereo.

28. Plaintiff has complied with the requirements of 35 U.S.C. § 287(a).

29. GM manufactures, imports, and/or sells audio and multimedia integration systems which have been installed in Buick, Cadillac, Chevrolet and GMC branded vehicles made in or imported into the United States since at least approximately 2013, including "CUE," "MyLink" and "Intellilink," as well as accessories to be installed at or after the time of delivery of the

vehicle (hereinafter collectively referred to as "Infotainment Systems"). These Infotainment Systems include head units, extension modules, and iPod/iPhone and mp3 integration kits that GM makes and sells, and purchases from third-party suppliers including, but not limited to, Alpine, Bosch, Continental, Delphi, Denso, Harman, LG and Panasonic.

30. The Infotainment Systems are sold in at least the following vehicles during the period from 2013 to the present: Buick Cascada, Enclave, Encore, Envision, GS, LaCrosse, Regal, and Verano; Cadillac ATS, CT6, CTS, ELR, Escalade, SRX, XT, XT4, XT5, and XTS; Chevrolet 1500, 4500, Avalanche, Blazer, Bolt, C/K Pickup 1500, C/K Pickup 2500, C/K Pickup 3500HD, Camaro, Caprice, Captiva Sport, Cargo Van, Colorado, Corvette, Cruze, Equinox, Express, HD, Impala, K1500 LCF 4500, LCF 4500HD, Malibu, Silverado 1500, Silverado 2500, Silverado 3500, Sonic, Spark, SS, Suburban, Tahoe, Traverse, Trax, and Volt; and GMC 1500, 2500, 3500, Acadia, C2500, Canyon, G2500, K1500, Savana, Sierra 1500, Sierra 2500, Sierra 3500, Terrain, and Yukon.

31. The Infotainment Systems support the integration of third-party external audio and multimedia devices, such as MP3 players, with the car stereo. The Infotainment Systems permit an end user to connect a third-party external audio or multimedia device to the car stereo by wire, such as through a USB port or auxiliary port, or wirelessly, such as through Bluetooth. Once connected, the end user may control the third-party external audio or multimedia device using the car stereo's controls, and the audio from the external device may be played through the car stereo and speakers while text, pictures, visual images, and video may be displayed on the display screen of the car stereo.

32. GM user manuals, instructional videos, websites, and other information demonstrate to the Buick, Cadillac, Chevrolet and GMC users, customers, and prospective

customers how an external audio device and external multimedia device may be connected to the car stereo by wire to, for example, a USB port, or wirelessly by Bluetooth, and how the external device may be controlled by the car stereo's controls. For example, the Manual for the MyLink, downloaded from https://my.chevrolet.com/content/dam/gmownercenter/gmna/dynamic/manuals/2018/Chevrolet/2018-chevrolet-mylink-infotainment-guide.pdf, "2018 MyLink Infotainment Manual," instructs:

28 Audio Players

treated as a folder. All files contained directly under the root directory are accessed prior to any root directory folders.

**No Folder :** When the CD only contains compressed audio files without any folders or playlists, all files are under the root folder.

**File System and Naming :** The song titles, artists, albums, and genres are taken from the file's ID3 tag and are only displayed if present in the tag. If a song title is not present in the ID3 tag, the radio displays the file name as the track name.

## USB Port

This vehicle is equipped with two USB ports in the center console. These ports are for data and charging.

The vehicle may have USB ports in the armrest, in the upper glove box, in the storage bin behind the radio (if equipped) and if equipped with Rear Seat Infotainment (RSI), there may be one USB port for charging in the rear media console storage area.

### Playing from a USB

A USB mass storage device can be connected to the USB port.

**Gracenote**

When plugging in a USB device, Gracenote service builds voice tags for music. Voice tags allow artists, albums with hard to pronounce names, and nicknames to be used to play music through voice recognition.

While indexing, infotainment features are available.

**My Media Library**

Allows access to content from all indexed media sources. Touch the Media icon on the infotainment display to scroll through the options until MyMedia is selected. Use gestures or touch the display to scroll through the content.

**USB MP3 Player and USB Devices**

- The USB MP3 players and USB devices connected must comply with the USB Mass Storage Class specification (USB MSC).
- Hard disk drives are not supported.
- The following restrictions apply for the data stored on a USB MP3 player or USB device:
  - Applicable audio extensions are mp3, wma, aac, m4a, and aif.
  - WMA and Apple lossless files are not supported.
  - Supported file systems are FAT32 and NTFS.

To play a USB device, do one of the following:

- Connect the USB.
- Press MEDIA on the center stack until the connected device is shown.

Use the following when playing an active USB source:

▶ : Touch to play the current media source.

II : Press to pause play of the current media source.

≪, ⏮, ⏮ :

- Press to seek to the beginning of the current or previous track. If the track has been playing for less than two seconds, the previous track plays. If playing longer than 2–5 seconds, depending on the device, the current track restarts.
- Press and hold to reverse quickly through playback. Release to return to playing speed. Elapsed time displays.

⏭, ⏭ ≫ :

- Press to seek to the next track.
- Press and hold to advance quickly through playback. Release to return to playing speed. Elapsed time displays.

**USB Menu**

Touch the Menu icon to display the USB menu. The following may be available:

**Shuffle :** Touch to play the tracks randomly. Touch again to stop shuffle.

**Tone :** Touch + or − to adjust the tone settings. See *AM-FM Radio* ⇨ *19*.

**Auto Volume (If Equipped) :** This feature adjusts the volume based on the vehicle speed. See *AM-FM Radio* ⇨ *19*.

**Bose AudioPilot Noise Compensation Technology (If Equipped) :** This feature adjusts the volume based on the noise in the vehicle and speed. See *AM-FM Radio* ⇨ *19*.

**USB Browse Menu**

Touch anywhere between the top and bottom menus or touch the Browse on the infotainment display to view the Browse menu and the following options are displayed along the bottom of the display:

**Playlists:**

1. Touch to view the playlists stored on the USB.
2. Select a playlist to view the list of all songs in that playlist.
3. Select a song from the list to begin playback.

**Artists:**

1. Touch to view the list of artists stored on the USB.
2. Select an artist name to view a list of all albums by the artist.
3. To select a song, touch All Songs or touch an album and then select a song from the list.

**Albums:**

1. Touch to view the albums on the USB.
2. Touch the album to view a list of all songs on the album.
3. Select a song from the list to begin playback.



## Bluetooth Audio

If equipped, music may be played from a paired Bluetooth device. See *Bluetooth (Overview)* ⇨ *93* or *Bluetooth (Infotainment Controls)* ⇨ *94* or *Bluetooth (Voice Recognition)* ⇨ *98* for help pairing a device.

The music can be controlled by either the infotainment controls or the controls on the device.

Music can be launched by pressing MEDIA on the center stack or touching the Media icon on the infotainment display.

To play music via Bluetooth:

1. Power on the device, and pair to connect the device.
2. Once paired, go into the audio application from the Home Page or through the applications tray. Touch the Media icon until Bluetooth displays.

**Bluetooth Audio Menu**

Touch the Menu icon on the infotainment display or MENU on the center stack to display the Bluetooth Audio menu. The following may be available:

**Tone Settings :** Touch + or − to adjust the tone settings. See *AM-FM Radio* ⇨ *19*.

**Auto Volume (If Equipped) :** This feature adjusts the volume based on the vehicle speed. See *AM-FM Radio* ⇨ *19*.

**Bose AudioPilot Noise Compensation Technology (If Equipped) :** This feature adjusts the volume based on the noise in the vehicle and speed. See *AM-FM Radio* ⇨ *19*.

Touch the Back icon on the infotainment display to go back to the previous menu.

**Manage Bluetooth Devices :** Touch to go to the Bluetooth page to add or delete devices.

When using the Bluetooth audio source, the radio may not be able to launch specific applications on your device. Use the device to start audio playback when it is safe to do so.

All devices launch audio differently. When selecting Bluetooth audio as a source, the radio may show as paused on the display. Touch play on the device or touch ▶ to begin playback.

Some phones support sending Bluetooth music information to display on the radio. When the radio receives this information, it will check to see if any is available and display it. For more information about supported Bluetooth features, see www.gm.com/bluetooth.

**COUNT I**
**(Infringement of the '786 Patent)**

33. Paragraphs 1 through 32 are incorporated herein by reference as if fully set forth in their entireties.

34. Blitzsafe has not licensed or otherwise authorized GM to make, use, offer for sale, sell, or import any products that embody the inventions of the '786 Patent.

35. GM has and continues to directly infringe one or more claims of the '786 Patent, including claim 57, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States infringing Infotainment Systems without authority and in violation of 35 U.S.C. § 271.

36. GM has and continues to indirectly infringe one or more claims of the '786 Patent by knowingly and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the infringing Infotainment Systems. For example, GM, with knowledge that the Infotainment Systems infringe the '786 Patent at least as of the date of the original Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '786 Patent by providing Infotainment System user manuals, product manuals, instructional videos, website information, and documentation that instruct end users how to use the Infotainment Systems, including specifically how to connect their external third-party audio and multimedia devices to the car stereo and how to control the external device using the car stereo's controls. GM induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '786 Patent, but while remaining willfully blind to the infringement.

37. GM has and continues to indirectly infringe one or more claims of the '786 Patent by contributing to the direct infringement, either literally or under the doctrine of equivalents, by others, including end users, by offering to sell, selling, and/or importing into the United States the infringing Infotainment Systems and with the knowledge, at least as of the date of the original Complaint, that the Infotainment Systems contain components that constitute a material part of the inventions claimed in the '786 Patent. Such components include, for example, interfaces that permit an end user to use a car stereo's controls to control an external third party audio device and multimedia device. GM knows that these components are especially made or especially adapted for use in an infringement of the '786 Patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, GM believed there was a high probability that others would infringe the '786 Patent, but remained willfully blind to the infringing nature of others' actions.

38. Blitzsafe has suffered damages as a result of GM's direct and indirect infringement of the '786 Patent in an amount to be proved at trial.

39. Blitzsafe has suffered, and will continue to suffer, irreparable harm as a result of GM's infringement of the '786 Patent for which there is no adequate remedy at law, unless GM's infringement is enjoined by this Court.

40. GM has committed and continues to commit acts of infringement that GM actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '786 Patent. Prior to the filing of the original Complaint, upon information and belief, GM had actual knowledge of the '786 Patent from prior litigations accusing products made by Infotainment System suppliers of GM and prior litigations in which Infotainment System suppliers of GM were involved as third parties. In addition, prior

to the filing of the Complaint, GM was served with subpoenas for documents and deposition testimony in connection with another action involving the ’786 Patent. GM’s infringement of the ’786 Patent has been and continues to be willful, entitling Blitzsafe to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

**COUNT II**
**(Infringement of the ’342 Patent)**

41. Paragraphs 1 through 32 are incorporated herein by reference as if fully set forth in their entireties.

42. Blitzsafe has not licensed or otherwise authorized GM to make, use, offer for sale, sell, or import any products that embody the inventions of the ’342 Patent.

43. GM has and continues to directly infringe one or more claims of the ’342 Patent, including claim 49, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States infringing Infotainment Systems without authority and in violation of 35 U.S.C. § 271.

44. GM has and continues to indirectly infringe one or more claims of the ’342 Patent by knowingly and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the infringing Infotainment Systems. For example, GM, with knowledge that the Infotainment Systems infringe the ’342 Patent, at least as of the date of the original Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ’342 Patent by providing Infotainment System operating manuals, product manuals, instructional videos, website information, and documentation that instruct end users how to use the Infotainment Systems, including specifically how to connect external third-party audio and multimedia devices to the car stereo and how to control the external device using the

car stereo's controls. GM induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '342 Patent, but while remaining willfully blind to the infringement.

45. GM has and continues to indirectly infringe one or more claims of the '342 Patent by contributing to the direct infringement, either literally or under the doctrine of equivalents, by others, including end users, by offering to sell, selling, and/or importing into the United States infringing Infotainment Systems, with the knowledge, at least as of the date of the original Complaint, that the Infotainment Systems contain components that constitute a material part of the inventions claimed in the '342 Patent. Such components include, for example, interfaces that permit an end user to use a car stereo's controls to control an external third-party audio device. GM know that these components are especially made or especially adapted for use in an infringement of the '342 Patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, GM believed there was a high probability that others would infringe the '342 Patent, but remained willfully blind to the infringing nature of others' actions.

46. Blitzsafe has suffered damages as a result of GM's direct and indirect infringement of the '342 Patent in an amount to be proved at trial.

47. Blitzsafe has suffered, and will continue to suffer, irreparable harm as a result of GM's infringement of the '342 Patent for which there is no adequate remedy at law, unless GM's infringement is enjoined by this Court.

48. GM has committed and continues to commit acts of infringement that GM actually knew or should have known constituted an unjustifiably high risk of infringement of at

least one valid and enforceable claim of the ’342 Patent. Prior to the filing of the original Complaint, upon information and belief, GM had actual knowledge of the ’342 Patent from prior litigations accusing products made by Infotainment System suppliers of GM and prior litigations in which Infotainment System suppliers of GM were involved as third parties. In addition, prior to the filing of the Complaint, GM was served with subpoenas for documents and deposition testimony in connection with another action involving the ’786 Patent. GM’s infringement of the ’342 Patent has been and continues to be willful, entitling Blitzsafe to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Blitzsafe prays for relief against GM as follows:

a. Entry of judgment declaring that GM has directly and/or indirectly infringed one or more claims of each of the patents-in-suit;

b. Entry of judgment declaring that GM’s infringement of the patents-in-suit has been willful and deliberate;

c. An order pursuant to 35 U.S.C. § 283 permanently enjoining GM, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the patents-in-suit;

d. An order awarding damages sufficient to compensate Blitzsafe for GM’s infringement of the patents-in-suit, but in no event less than a reasonable royalty, together with interest and costs;

e. An order awarding Blitzsafe treble damages under 35 U.S.C. § 284 as a result of

GM's willful and deliberate infringement of the patents-in-suit;

f. Entry of judgment declaring that this case is exceptional and awarding Blitzsafe its costs and reasonable attorney fees under 35 U.S.C. § 285; and

g. Such other and further relief as the Court deems just and proper.

Dated: November 15, 2019

Respectfully submitted,

*/s/ Sam Baxter*

Alfred R. Fabricant
NY Bar No. 2219392
Email: afabricant@brownrudnick.com
Lawrence C. Drucker
NY Bar No. 2303089
Email: ldrucker@brownrudnick.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambriankos@brownrudnick.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@brownrudnick.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
Timothy J. Rousseau
NY Bar No. 4698742
Email: trousseau@brownrudnick.com
John A. Rubino
NY Bar No. 5020797
Email: jrubino@brownrudnick.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Sarah G. Hartman
CA Bar No. 281751
Email: shartman@brownrudnick.com
**BROWN RUDNICK LLP**
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**McKool Smith, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**ATTORNEYS FOR PLAINTIFF, BLITZSAFE TEXAS, LLC**